Mayme C. Sommers, Administratrix, C. T. A., Estate of E. E. Sommers, Deceased, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 31225.   Promulgated April 20, 1931.

*E. R. Campbell, Esq.*, for the petitioner.
*J. E. McFarland, Esq.*, for the respondent.

OPINION.

BLACK: The two contentions made by petitioner, alleging error on the part of respondent in determining the deficiency, are as follows:

(a) The Commissioner erred in disallowing $75,000.00 for leasehold interests, good will, clientele and going concern value transferred to the Sommers Oil Company in partial consideration for five hundred forty (540) shares of the stock of the Sommers Oil Company, as part of the costs of said stock, for the purpose of ascertaining gain when sold.

(b) The Commissioner erred in refusing to treat the gain derived on the sale of Sommers Oil Company stock, including one hundred twenty (120) shares acquired on February 1, 1921, as capital gain, and in refusing to calculate the tax thereon at the rate of twelve and one-half per cent.

There is no evidence to sustain the contention of petitioner that the stock of the Sommers Oil Company was issued in payment of leaseholds, good will, trackage rights to decedent, E. E. Sommers, or any one else. In the first place, whatever good will Sommers had built up in the oil business was for the Great Western Oil Company, of which he was manager from 1908 to 1920. It was this good will, built up for the Great Western Oil Company by Sommers and his associate employees, Spencer and Bennett, which was a large factor in enabling that company to sell out in 1920 to the Gates Oil Company for $150,000. The evidence shows that of this amount the Great Western Oil Company paid Sommers $20,-000, the nature of which payment is shown in our findings of fact. There is no evidence to show that Sommers transferred any good will to the Sommers Oil Company, organized in 1920. The con-

tention made by petitioner in the instant case is a very similar one to that which was made in *Otto Braunwarth*, 22 B. T. A. 1008, and in denying the validity of such contention in that case, we said:

It may be conceded that the petitioner had built up a considerable clientele and business acquaintanceship, and that this clientele followed him to a large extent, during his various business enterprises. But this personal following does not constitute good will within the generally accepted meaning of the term.

Another item which petitioner claims constituted an important part of the $75,000, which she seeks to add to the cost basis of the stock owned by decedent in the Sommers Oil Company, is the value of a certain lease owned by decedent of premises of the Neef Brewing Company and trackage rights secured from the Denver & Rio Grande Railroad Company. The evidence establishes that these were transferred by decedent to Sommers Oil Company in 1920 and were used by it in its business and the corporation paid the rent. Whether this transfer was by oral or written assignment is not shown. Whether decedent received anything of value from the corporation in consideration of the transfer, over and above the corporation's agreement to pay the rent, is not shown. If these things had a value greater than the rental which the corporation was to pay for the use of them, that fact is not shown. Certainly there is nothing in the record to show that it had any connection with the issuance of the capital stock of the corporation. Nothing was set up on the books of the corporation as an asset in the way of good will or leasehold interest or trackage rights.

The evidence shows that the stock was issued for cash to Sommers and the Continental Oil Company, except two or three shares for directors qualifying shares, and of the amount issued from time to time, decedent subscribed for and received 540 shares at a cost of $54,000. This represented his only cost. In 1922 he sold this stock for $142,000. In computing gain or loss upon the sale, the statute says the basis shall be the cost of the property sold. Section 202, Revenue Act of 1921.

Petitioner's contention that $75,000 should be added to the cost of stock acquired by decedent on account of leaseholds, good will, trackage rights, etc., can not be sustained. To arrive at that conclusion, the Board would have to hold that decedent acquired his stock from the corporation at the time of original issue at a cost of about $230 per share, whereas other stockholders acquired theirs at the same time for $100 per share. The record will not sustain any such holding. The cases which counsel for petitioner cites are not in point. They are cases where the corporation issued its shares for a mixed aggregate of tangibles and intangibles. It is enough to say that we have no such case before us in the present proceeding.

Respondent did not err in the basis which he used for determining the gain on the sale of the decedent's stock in 1922.

The second contention of the petitioner is that the 120 shares of stock issued to decedent February 11, 1921, although not actually held by him for a period of two years, as required by section 206 of the Revenue Act of 1921, should be construed to be within the terms of that section.

The petitioner argues that, in accordance with the agreement made by the decedent and the other stockholders, since all stock subsequently issued should be in proportion to the original issues, a stock right was created and that all stock subsequently issued should be construed to have been issued as of the date of the agreement. The record does not show that any " stock rights " were issued, nor that the corporation was in any way legally bound to issue stock to Sommers. No rights were in existence which were binding on the corporation and accordingly, there was no property which could be made the subject of sale. The acquisition of stock by the petitioner dates from the time it was actually issued to him. Since the stock which was acquired in February, 1921, had not been held for a period of two years when the sale took place in November, 1922, it is not subject to the provisions of section 206 of the Revenue Act of 1921.

As it appears that the petitioner has paid some of the deficiency since the deficiency notice was issued,

*Decision will be entered under Rule 50.*